First case for argument this morning is 18-17-04, Allied Machine & Engineering v. Competitive Carbide. Mr. McIntyre. Thank you, Your Honor. I have the unenviable duty this morning of condensing eight years into 15 minutes, but I'm going to do my best. And before I start, I'd like to give just a little bit of background here. Unlike many cases that probably come before you, this is not an abstraction for me. The gentleman who started Competitive Carbide and I used to be partners in an almost identical business and I have made and designed these tools. So, I know them inside and out, and not only does it give me confidence in my arguments, but also the knowledge that what I'm going to talk about is substantially grounded in fact. So, when I talk about inserts and pockets and angles, this is not something my client has told me or I've had to learn. I learned this the hard way when I was in law school with a couple of small children in the house. Well, I don't think we're litigating the underlying issues of the details of this. The issue, as you know, is that the District Court below refused to entertain your remaining arguments with regard to inequity. That's correct. But they're all undertwined, and this is why. The first case, and this goes substantially to inequitable conduct arguments, which the arguments weren't strong enough. And I'll talk about the procedures later. I don't think he said that the arguments weren't strong enough. He said it wasn't property, he wasn't going to proceed with the case purely on inequitable conduct. One question I have for you is, in the discussion of inequitable conduct, and in your papers, you consistently, continuously referred to monetary recovery and damages.  How much of the inequitable conduct allegations were litigated? Somewhere on the north side of $300,000 in costs in defending this case. So the cost, you want to have a trial, and the damages would be the cost you spent in having the trial. You're the only one that wants the trial. No, no. The cost, the defense cost, up to the point where this case was stayed, was somewhere north of $250,000. Well, actually, that's funny. Maybe I'm misreading it. There are a few numbers thrown in, but I don't think I saw that. Initially, you said $140,000 in legal fees. And then somehow in your papers here, I thought we were up to $400,000. I didn't understand how we accumulated $250,000 in legal fees from district court to here. Because the two cases got intertwined, and in a damages hearing, I think we can parse out where case one overlapped on case two, and case two overlapped on case one. When you say damages, are you referring to attorney's fees? Yes. Aren't attorney's fees distinct from damages? I treat it all as one under octane. Can you tell me where in octane they treat attorney's fees as damages? Well, I think part of the issue that I think the Court's concerned about is when this case was filed and we started defending it, we did not have a clue as to the breadth and depth of the inequitable conduct. We had just finished defending case one successfully at the summary judgment level with no discovery whatsoever. So we thought we were over. Then this case started, and the two cases overlapped because one of the issues that was appealed... I honestly don't understand how that answers my question or why it's relevant about this procedural history. Your argument seems to be you should have been able to pursue the inequitable conduct claim to get damages. But it seems like all we're talking about is attorney's fees, which is distinct and separate from damages, isn't it? It can be one and the same, I believe. Again, I ask you what supports that notion because damages are something that is usually awarded for infringement. There can be trouble damages for willful infringement and egregious conduct. Attorney's fees, at least in patent cases, are awarded under a separate statutory provision. I don't disagree. I think it's more of a semantic issue. And if we're on the wrong side of the semantic issue, I won't disagree with you. Well, that may be relevant if it misled the district court as it would have, I think, a number of us if you were just talking about damages and monetary recovery. And we would say, well, wait a minute. There's none of that that's going to come from however much we over-litigate the issue of inequitable conduct. Well, I think the concern we've had is when we started, as I said, we had no clue what was actually going on behind the scenes. And all of this came up— And yet you pled it. Pardon? And yet you pled it. You pled inequitable conduct in your answer despite your admission here that when that started you had no clue about inequitable conduct. We pled it. We pled it as a defense because in case one, we learned that the plaintiff, same company, in case one was well aware of the prior art and the on-sale bar, but they proceeded anyway. So we thought as an abundance of caution we would plead it. Well, you didn't plead it as a defense, actually. Under affirmative defenses—well, maybe I'm wrong, but you have your list under affirmative defenses, and then you have a counterclaim for D.J. Right. Invalidity. And then somehow within this invalidity thing you seem to be talking about inequitable conduct under the heading of invalidity, but you never mention—you mention the word material information. You never mention in the pleadings that I can find, so you can show me if I'm wrong, any intent to deceive. We didn't know that at the time. Well, don't you have to allege it? I mean, you have to allege it, right? How does the—under Iqbal Tromley or whatever—by the way, just to take note of the fact that in the complaint you also miscite the 35 CFR 1.56 for the basis, just the statutory basis for inequitable conduct. It's not 35, it's 37, which you cite somewhere else. Thank you. Going back, because of what had happened in Case 1 and the fact that they tried to put the 616 back in Case 1 while the summary judgment was pending, we knew at that time with the plaintiff a year earlier. So the initial intent was the same as in the first case, invalidity because of prior art and on sale bar. That's what we were concerned about at the time. Okay. Well, you were concerned about—I guess I just got to tell you, your brief is full of hyperbolic statements, one of which is to call this surreal. Why isn't it kind of surreal, if I'm understanding correctly? So tell me if I'm not—where we are now. The patent is gone. Yes. The case has been dismissed with prejudice. And so as I see where we are, you have an allegation of inequitable conduct, which will get you no further relief than already exists, except for the attorney's fees that you would incur by pursuing this inequitable conduct claim. And that's just a question because nobody is required to give you attorney's fees for inequitable conduct. Firstly, you might lose it. And even if you win it, you're not automatically entitled to attorney's fees. Am I misreading something about what's going on in this case? It is so convoluted. Well, I said it. I mean, it may seem to be surreal in respect of why are we here and what are we doing, but I don't know that it's that convoluted. Well, it is because it isn't. Maybe convoluted is the wrong word. The whole point is when Case No. 2 was filed, when Case No. 2 was filed, the accused device, the helmet head tool, had been disclosed in Case 1 as to have been put on the market, made, used, and sold 2001-2002. What has that got to do with anything we're talking about here, about whether you ought to be able to pursue an inequitable conduct claim on a patent that no longer exists? Because up until the point where the patent was invalidated, this was a live case. It was stayed, but it was live. Okay. All right. Okay. Okay. So it's alive until it's declared invalid. Okay. And here's the distinction, and this is why this case is so unique. In all of the other cases that have been cited, even by Allied, the reexaminations and the litigation were between the same parties. Here, the reexamination — What has that got to do with anything we're talking about here? It has to do with it because when the case law talks about the reexamination ending the case, that has to do with the reexamination that was connected with the case. I'm trying to think of an analogy, but an analogy would be you sue a doctor for a malpractice, and during the course of the case, somebody shoots the doctor. Is your case over? Someone else invalidated the 616 patent. Well, that's because you presumably owed some damages for the malpractice, real damages, as Judge Hughes pointed out, not attorney's fees. So, right, the case might not be over because you still have a malpractice claim, which you may be entitled to damages. And we may be entitled to them. Here we're talking about an inequitable conduct claim. The relief granted, even if you were to prevail, which is dubious, is the patent is unenforceable, which is already the state of play here, right? I will admit, the hole in our argument is, when we started the defense — Isn't the hole in your argument that you never filed a proper 285 motion for attorney's fees? You may or may not have won that, but you didn't ever file one after the dismissal. We couldn't, because — Sure you could have. It was a final judgment. Rule 54-something, I forget which subsection, allows you to file a motion for attorney's Whether you would be considered a prevailing party under 285, whether it was exceptional circumstances, are all questions that would have been live for the district court. You may have lost, but you could file a motion for attorney's fees. Why didn't you? Because we took a different tack. We took the position that we couldn't do that. We couldn't go back and relitigate — You're saying that position is wrong, which it is. Why do you think you couldn't file that motion? You're now trying to come up here and say attorney's fees are damages, which is what made this completely different part of the case still alive, when the damages for ineffable conduct, as I think we've said about half a dozen times already, are invalidation of the patent, which had already happened. I don't disagree. Our read of the law was we had to get the original case opened up, the 616 — the patent infringement case — reopened before we could proceed with our inequitable conduct claim. So you don't — you didn't want, though — you're not — I mean, you're talking about getting attorney's fees. You're not talking about getting the attorney's fees that have been heard thus far. You're talking about you want to be able to litigate the inequitable conduct claim and then get attorney's fees for litigating an inequitable conduct claim. Is that what's going on here? No. We want attorney's fees for the defense of the case up until the point where it was dismissed. That's our — that's our attorney's fees point. And why didn't you file a motion? Because the case was closed. But that's when you get attorney's fees. Well, no. I mean, that's when you file attorney fees petitions. You can file protective ones before a final judgment, but you don't have to. You file after. I mean, have you read the Federal Rules of Civil Procedure on this? Of course. Well, what does Rule 54 say? In our opinion, you may be right, I may be wrong, but the question was we could not bring that issue to the lower court with the case dismissed. Our only — our only avenue — What's — do you have a single case that says a dismissal prevents you from filing an attorney fees position — petition? No. I would like on rebuttal for you to be prepared to explain to us why we should not sanction you for a frivolous appeal as filed and as argued. I see no basis for this appeal. I think it's a colossal waste of the court's time, your time, his time, and the party's money to the extent that they're paying you to do this, both of you. So I'd like you, when you stand back up, to be prepared why we should not sanction you for having filed a frivolous appeal. Thank you. Good morning, Your Honors. May it please the Court, Nathan Webb, appearing on behalf of the Appellee Allied Machine Engineering. I'd like to begin our conversation this morning by providing a little more focused context for assessment of the district court's February 2018 decision from which this appeal arises, which dismissed all of the claims in the case. And what I want to do is remind the court that there were two separate and distinct motions that the court was answering in that order. The first is an early 2017 motion that Allied had made under Federal Rule of Civil Procedure 41A that sought voluntary dismissal of its infringement claims and the defendant competitive carbides, invalidity, declaratory judgment, and equitable conduct counterclaim. And then the second motion that the court was responding to was the defendant's motion to vacate the stay, set the case for a case management hearing so that they could proceed to trial on the question of inequitable conduct. In that context, when we look at the district court's decision, it's clear that there's two parts. The first is the court, we believe, properly concluding that because the 616 patent had been found invalid in the PTAB proceeding that was now a final decision, that it no longer had subject matter jurisdiction over either the plaintiff's claims or the defendant's counterclaim for invalidity of the patent. Carbide seems to admit that its invalidity and unenforceability counterclaims were moot when PTAB invalidated the 616 patent on both page 14 of its reply brief and also in the joint appendix at page 515. The second part of the court's decision deals with competitive carbide's motion to vacate the stay and move the case to trial. And what I think the court is doing in the second-to-last paragraph of its opinion in order is saying that because the counterclaim did not specifically mention attorneys' fees and was focused only on the invalidity question, that there was no reason to move to trial on that. And I think the court is exactly right in saying that in the court's order, there was nothing that prevented or discouraged competitive carbide from filing a motion for attorneys' fees under Section 285 and Federal Rule of Civil Procedure 54-D2. Right. It could have filed one after the court entered its opinion and judgment within whatever the time the rules were met. It may not have prevailed because it may not have given them prevailing party status, but that would have been something for the district court to figure out. That's exactly correct, Your Honor. And this court, I think, has been very clear in IPX Holding v. Amazon and other cases that any claim to attorneys' fees must be processed in compliance with Rule 285, exempts requests for attorneys' fees thereunder from compliance with the rule. The district court seemed to be leaving the door wide open for the defendant to file such a motion by not entering final judgment, even after it's issued its decision. Well, it's been a little unclear to me, and maybe that would have been sufficient. That's a little ambiguous to me because what I understood your opposing counsel to be really wanting was, coupled with attorney fee, he wants an opportunity to litigate this inequitable conduct claim, notwithstanding that there are no additional damages or monetary recovery or anything that would result from that. Right? I mean, I don't know. It's a question of interpreting his motives, but it seems to me maybe he didn't file the attorney's motion because somehow he just wants to litigate this inequitable conduct claim. Your Honor, I think that that suspicion is confirmed by their conduct after the case was stayed in 2013. And you'll recall that as soon as that ex parte reexamination, which was instituted by a third party, was actually accepted by the USPTO, that we filed a motion to stay. And then after that, they filed a motion, and we had extensive pleadings, on whether the stay could be vacated. So they wanted to litigate this, even though we were saying that we should wait to make sure that the patent is valid before we can take it. Is that where these attorney's fees mounted up? Because it was hard for me to tell why. Your Honor, I think you've correctly observed that the pleadings in this case include a number of different monetary amounts. And it's difficult to understand exactly what those are tied to or at what phase of the case. Okay. Anything else? I'm happy to address merits of this inequitable conduct claim in the event that the Court thinks that there was some error by the district court. We don't think that it meets the fairer sense standard. But the merits of the inequitable conduct claim are not before us, right? I agree, Your Honor. I agree. Not under anybody's scenario are we litigating inequitable conduct here, now, today. Thank you. Thank you, Your Honor. The reason that the post-judgment 285 claim was not raised is because the court said we didn't have the opportunity to raise that claim because we didn't plead it initially. And we took that on face value. I don't disagree with you that there may have been a procedural remedy. I don't think that's what the district court said. No, the district court — I don't think the district court ever prohibited you from raising a subsequent attorney's fees request. The district court said, I'm not going to consider it now because I don't see anything sufficient in the papers to qualify as a motion. He didn't say you can't file a motion. That was our interpretation, that he had closed the door. Can you point to me any language in the district court's opinion that says that? Not language that says you didn't include it in your complaint or something like that because that's certainly true. There's no question we didn't include it in our complaint. But a language that says, and furthermore, we prohibit allied or not allied you from filing an attorney's fee motion under 285. Sorry, I don't want to take up your rebuttal time. Why don't you respond to Judge Moore's question that she posed? The reason is we proceeded in good faith. It was our belief that the judge had closed the case and that 285 was foreclosed because we didn't plead it. I will concede we had no idea that 285 would apply in this case when we filed the answer. It was only after we got into the discussions and into the depositions and started looking at what was going on in this case that we realized it was a 285 case. And as I recall, in our motion to vacate, we were saying — You're telling us now the 285 case had only to do with the inequitable conduct piece of it and not the other piece of it? The 285 case focuses on the fact that not only was the 616 patent prosecuted with the full knowledge of the prior art, but they — what I can't begin to understand. Maybe you can see it more clearly than I can. But the device that they accused of infringing the patent was the device that was already on the market. You're giving merits to us. Pardon? This case has nothing to do with the merits. You could be right. In fact, it turns out you were. The patent was invalid. It turns out you were right. It was an invalid patent that your client was accused of. Why I asked you to defend the appeal has nothing to do with the merits of the underlying invalidity or inequitable conduct claim. It has to do with your process, you personally, in having filed the appeal arguing that a lower court should conduct an entire proceeding of inequitable conduct when virtually nothing has happened to this point. He should begin the process of a claim on inequitable conduct, take it through trial, so that you can then get attorney's fees when the patent is invalid. The reason — I am flabbergasted at the fact that you did not advise your client properly, that that would be a colossal waste of time for everyone, and that you would rake up huge fees for all of those proceedings, which your client would then be required to pay. And I'll also tell you I don't like your shell game with the number of attorney's fees. $400,000 and change? What were your rights that way? We're seeking $400,000 and change. That was — the reason that that was put in there is it's illustrative. The reason that the appeal was filed is because our understanding of Judge Boyko's order is because you didn't plead 285, you're permanently foreclosed. So what — I mean, as a lawyer, and subject to all your ethical rules, what research did you undertake to come to the conclusion that you were prohibited from filing a 285 motion or the other argument you seem to raise, that attorney's fees are part of damages for inequitable conduct? Because at least on the first part, there has to be dozens of cases that say you can file a 285 motion after a case is dismissed. I mean, you can't just come up here and say — because I've asked you if you have any precedent in support. You don't cite any. You didn't cite anything in your brief. It doesn't even feel like you've done any legal research here. And if you've done a modicum of legal research, you would have realized that you should have filed a 285 motion. Frankly, if you've done any modicum of legal research, you would have filed a 285 motion to protect your client. I'll read of the district court's order. That's not good enough. When you get an order from the district court and you think it's wrong, you have to at least do some legal research to determine whether there's appealable error there or not. If you thought he had prohibited you from filing that motion, you probably should have tried to protectively file one and then appeal, or you could have at least said we were prevented from doing it, but you didn't even cite any cases to show that you were prevented from doing it. The reason we went in this direction is because the patent was not invalidated. In this case, it was externally invalidated. It doesn't matter. I mean, you argue a bunch of subsidiary facts. It doesn't matter if you didn't shoot the dead guy, but somebody else did. He's still dead. I don't disagree. That's why we believe that the appellate route was the correct one. Can you explain to me the difference? We're at $150,000 initially for attorney's fees, and now we're up to $400,000 and change. Is that for the cost of this appeal? No, no. In fact, I did the appeal for free because the principal is a good friend of mine. You get what you pay for. So we're looking at a situation. If you are to prevail here, you go to trial on inequitable conduct. If you lose, then your client is out whatever fortune and attorney's fees have been incurred. If you win, you still have to ask for attorney's fees, and I think you're on maybe thin ice under the circumstances where a district court says, we litigated inequitable conduct for no reason other than attorney's fees. I think whether or not you're going to get attorney's fees is a really open question. So that's the situation you're here spending our time and the other side's time and money trying to press. Am I missing something in what's going on here? To a certain extent, you are. What we were concerned about is when the district court terminated the case because of the external invalidation, all we wanted the district court to do was reopen the case and let us go back and have a 285-type proceedings, which would have been very brief on the inequitable conduct. That's all we were asking for. But you can't get a 285 proceeding on the inequitable conduct until the whole inequitable conduct thing is adjudicated. You can't say we sort of alleged inequitable conduct and now we're entitled to attorney's fees for inequitable conduct. You'd have to adjudicate the inequitable conduct claim, right? You're missing a step here. And that adjudication would be costly to both sides and using resources of the judiciary for no reason other than you should be able to collect, in case you win, attorney's fees you incurred in that proceeding. What am I missing? What we're missing here is had this case gone to trial, forget karma and the reexamination. Our position was we would win, we'd probably get summary judgment, just like we got in case number one, and then we'd get our attorney's fees. Well, you don't automatically get attorney's fees. Pardon? You don't automatically get attorney's fees. No, but we can certainly adjudicate that. But when you say if this case had gone to trial, are you including in that inequitable conduct? If the case had gone to trial, my read was it was going to go to trial just like case one. It would go out on summary judgment very quickly. Just to be clear, summary judgment is never granted for inequitable conduct. It's impossible to prove intent beyond a reasonable doubt for any juror. Summary judgment just doesn't work for inequitable conduct. I mean, maybe there is a case somewhere where it's happened, but given the level of intent that is required by our case law, it is not an issue that's almost ever right for summary judgment. I didn't expect summary judgment on inequitable conduct. I expected summary judgment on on-sale bar and prior art, which they had in their hands. So all this time, just to be clear, all this time, we've been thinking that your only reason for wanting to continue the trial was to litigate the issue of inequitable conduct and unenforceability, for which potentially due to 85 damages. You're saying no, just to be completely clear. You're saying you think the district court erred in not letting you also litigate all of your invalidity claims, even though the patent is already in play. No. No? What we're saying is the validity was externally determined. Had this gone to trial, we'd have probably determined invalidity on summary judgment on on-sale bar and prior art. That was, I think, in the 90th percentile, given the circumstances. At that point, we would then proceed to ask for our attorneys' fees. So you're saying the error is the district court didn't right now let you litigate invalidity. No. I'm saying what the district court erred was not letting us proceed to make the attorneys' fees argument based on the facts in the underlying case. What is the—so that has nothing—so now you're telling us this case has nothing to do with your wanting to be able to litigate inequitable conduct. It only has to do with attorneys' fees encouraged not in connection with inequitable conduct, but encouraged in connection with the other validity aspects. Is that right? In part. In part. Because our claim for attorneys' fees— Well, what's the other part that I'm missing? That's part of it. What's the other part? Well, I think we're mixing up the conduct of the plaintiff in the case with inequitable conduct because it's a case within a case. So if we miraculously agreed with you and send this back, what are you going to ask the district court to do on remand? I'm going to ask him to entertain an attorneys' fees claim under 285. When you never filed one before. We didn't anticipate this conduct. What conduct? The voluntary dismissal? No. The inequitable conduct? No, I'll tell you what conduct we didn't anticipate. When I took the deposition of the lawyer who prosecuted the 616, he admitted that he— You knew all this at the time their motion to dismiss came in. You responded. You knew all of this. You didn't file a motion for attorneys' fees. No. We put that all in our motion to reopen the case so we could proceed. We're in that motion to reopen the case. Does it ask for attorneys' fees? That's what we asked for. We wanted the case reopened so we could litigate the issue of inequitable conduct. But now — So you couldn't — I mean, you weren't seeking fees now on this record. You were forcing the judge to let you have a bench trial on inequitable conduct and then get attorneys' fees for that, right? That's what you were looking for? We're asking the judge to have a bench trial on the plaintiff's conduct up to the point where the 616 was externally invalidated because of the prosecution of the patent and the prosecution of the case. All right. That's the issue, is — Do you want to be able to litigate inequitable conduct? And your argument is when we say why the patent's already invalid, all the claims have been struck down, it's because you think you can get attorneys' fees for that. So you want to litigate — be forced to the district court to litigate something so that you think you might likely or possibly win attorneys' fees, assuming, of course, you win the case. It's the case within the case. Yes, it's the same evidence that we would put on to invalidate the patent. But that evidence is the same evidence that would suggest a 285 award. Do you have any estimate about how much the bill for attorneys' fees would be for the litigation of bench trial on inequitable conduct? In this case, probably two days, three days of preparation. All the work's been done. All the evidence is there. That's the issue. It was the tail. And we were shocked because we didn't think the karma reexamination would amount to anything. We followed those hundreds and hundreds of pages. Okay, so you were wrong, but you should celebrate because you got rid of the patent. You shouldn't bemoan the fact that you were wrong and the patent was invalidated. I don't quite get that. Well, I don't bemoan that. But what I do bemoan is the fact that we had to litigate this case as if it were a real patent infringement case, right up to the point of the karma stay, and it wasn't anything remotely like a legitimate patent infringement case. Okay, thank you. Case is submitted. Thank you.